

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAMAR WHITFIELD,** | : | |
| **ASHLEY McCLINTOCK** | : | |
| **Individually and on behalf of minor** | : | |
| **Child C.W.** | : | |
| | : | **CIVIL ACTION NO.** ___19cv4217___ |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **SHARON HILL BOROUGH,** | : | |
| **SHARON HILL POLICE** | : | |
| **DEPARTMENT** | : | |
| **P/O SEAN JOHNSON** | : | **FILED** |
| **P/O THOMAS KESSER** | : | |
| **P/O JOHN DOE 1** | : | **SEP 1 2 2019** |
| **P/O JOHN DOE 2** | : | KATE BARKMAN, Clerk |
| **P/O JOHN DOE 3** | : | By_____Dep. Clerk |
| **P/O JOHN DOE 4** | : | |
| **P/O JOHN DOE 5** | : | |
| **P/O JOHN DOE 6** | : | |
| | : | |
| **Defendants** | : | |

---

## COMPLAINT

1.     Plaintiffs Lamar Whitfield and Ashley McClintock, individually and on behalf of their

minor child, C.W., bring this action pursuant to 42 U.S.C. § 1983 and under applicable

Pennsylvania law, seeking relief for unreasonable search and seizure, use of excessive force, and

assault and battery, in violation of the Fourth and Fourteenth Amendments to the United States

Constitution, Article I § 8 of the Pennsylvania Constitution and applicable Pennsylvania law, by

the defendant Sharon Hill Borough and the above-referenced Sharon Hill Borough Police Officer

(Johnson) individually, Folcroft Borough Police Officer (Kesser) individually, and Officers John

Does one through six, from police departments in and around the area of Sharon Hill, individually.

2.      It is believed and therefore averred that the Sharon Hill Borough adopted, maintained, and/or condoned unconstitutional policies that sanctioned the obtaining of a search warrant without probable cause and executing a search warrant in an intrusive, unreasonable and violent manner in violation of citizens' constitutional rights.  It was these unconstitutional policies that deprived plaintiffs Lamar Whitfield and Ashley McClintock and their minor child C.W. of their constitutional rights and inflicted emotional distress on plaintiffs.  In addition, the individual police officers acted in such a way as to: deprive plaintiffs of their constitutional rights to be free from unreasonable search and seizure and bodily integrity; inflict emotional distress on plaintiffs; and commit assault and battery upon them.

3.      Plaintiffs seek compensatory damages, punitive damages, and reasonable attorneys fees pursuant to 42 U.S.C. § 1988 severally and/or jointly against all named parties.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claim occurred in Sharon Hill Borough, which is in the Eastern District of Pennsylvania

## PARTIES

6.      Plaintiff Lamar Whitfield currently resides at 229 Norris Street, Chester, PA.  At all relevant times he was an adult residing at 101 Pusey Avenue, Apartment 2, Collingdale, PA.

7.      Plaintiff Ashley McClintock currently resides at 229 Norris Street, Chester, PA.  At all relevant times she was an adult residing at 101 Pusey Avenue, Apartment 2, Collingdale, PA.

2

8.      Plaintiff C.W. currently resides at 229 Norris Street, Chester, PA.   At all relevant times

he was a minor child residing at 101 Pusey Avenue, Apartment 2, Collingdale, PA.

9.      Defendant Sharon Hill Borough is a borough existing under and by virtue of the laws of

the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the

Sharon Hill Police Department with a proper place of service at 250 Sharon Avenue, Sharon

Hill, PA  19079.

10.     Defendant Sharon Hill Police Department is an entity existing under and by virtue of the

laws of the Commonwealth of Pennsylvania, with a proper place of service at 1110 Spring

Street, Sharon Hill, PA  19079.

11.     Defendant Police Officer Sean Johnson, badge no. 6166, was at all relevant times employed

by the Sharon Hill Borough Police Department and/or Sharon Hill Borough with a proper place of

service at 1110 Spring Street, Sharon Hill, PA  19079.

12.     Defendant Police Officer Thomas Kesser, was at all relevant times employed by the

Folcroft Borough Police Department with a proper place of service at 1555 Elmwood Avenue,

Folcroft, PA  19032.

13.     Defendant Police Officers Joe Doe one (1) through six (6) were at all relevant times police

officers employed by Sharon Hill Borough Police Department and/or Sharon Hill Borough,

Folcroft Borough Police Department and/or other police departments in and around the area of

Sharon Hill.

14.     At all material times, the defendant Sharon Hill Borough, Sharon Hill Police Department,

Police Officer Sean Johnson, Officer Thomas Kesser and John Does one through six acted within

the scope of their employment, in their official capacity, under color of state law, and pursuant to

the customs, policies and practices of the Sharon Hill Borough and/or Sharon Hill Police Department.

## FACTUAL ALLEGATIONS

### A.    The Unreasonable Search

15.    At approximately 5:30 a.m. on September 29, 2017, while Ms. McClintock and her minor child, C.W., age 6, were home at 101 Pusey Avenue, Apartment 2, Collingdale, PA, asleep in her bed, the defendant police officers, armed with a search warrant for the premises, violently kicked open the door to Ms. McClintock's home.

16.    The defendant officers gave no warning and did not identify themselves as police officers, before they all barged into plaintiffs' home. At the time, only Ms. McClintock and C.W. were at home. C.W.'s father, Lamar Whitfield, who lived at the residence with Ms. McClintock and their son C.W., had just gotten off work at A Bob's Towing, in Philadelphia. He was on his way home. He had left for work the previous evening. When Mr. Whitfield worked nights, C.W. would sleep in the master bedroom with his mother. The family dog, a Labrador, would sleep on a blanket on the floor, by the foot of the bed.

17.    While C.W. and his mother slept, no less than six plain clothed officers, all men, entered the home. The officers were accompanied by numerous police dogs. To gain entry, the officers broke the glass on the front door leading into the residence, and kicked in the door, destroying the door lock and damaging the door panel. Immediately thereafter, they, and their police dogs, entered the residence and proceeded to Ms. McClintock's bedroom, where she and her 6-year-old child lay sleeping

18.    The officers entered the bedroom, waking Ms. McClintock and her son, and ordered them out of the bed. Most, if not all, of the officers had their guns drawn, and trained on Ms. McClintock

4

and C.W. Ms. McClintock told the officers that she was wearing only her night clothes and asked to be permitted to dress herself. The officers refused, and Ms. McClintock was forced to get out of bed in her panties and a tee shirt.

19.     Neither Ms. McClintock nor her young son C.W. were physically threatening or resisted the officers. The officers told Ms. McClintock and C.W. that they would shoot the family dog. To prevent this from happening, Ms. McClintock sequestered the dog in the bathroom.

20.     C.W. then watched in terror as the officers pointed their guns and violently handcuffed and screamed at his mother. The officers surrounded Ms. McClintock while she stood in her bedroom, half-naked in handcuffs. Ultimately, the officers decided to allow Ms. McClintock to put on her pants; however, since she was handcuffed behind her back, she was unable to dress herself. The officers, all male, dressed her, in full view of her son.

21.     Ms. McClintock and C.W. were directed to sit in the kitchen of the residence, Ms. McClintock was still handcuffed behind her back. While in the kitchen, Ms. McClintock and C.W. watched in terror as the officers and their dogs ransacked the home, tearing through furniture, removing ceiling tiles, overturning mattresses, and leaving the family's personal belongings strewn about the house.

22.     Ms. McClintock's son C.W., sat alongside his mother in the kitchen, and helplessly watched her, handcuffed, crying and afraid.

23.     The officers allegedly were searching for drugs, money, and firearms.

24.     The officers recovered no evidence of drug distribution or weapons during the search.

## B.     The Deficient Search Warrant

25.     The search warrant contained material falsehoods and lacked a basis for the officers' alleged probable cause belief. (See search warrant attached as Exhibit "A".) The "probable cause"

is based upon the following facts and circumstances (hereinafter "affidavit") submitted in support of the warrant, which contained numerous material misrepresentations. When exposed, those misrepresentations eliminate probable cause for the police to search the plaintiffs' home.

26.     According to the affidavit, in July of 2017, a confidential informant told the affiant that he, as well as other individuals, had purchased cocaine from plaintiffs at their residence in July of 2017. These facts are false as no such sales ever took place.

27.     According to the affidavit, the affiant, defendant Johnson, met with the alleged confidential informant in August of 2017 for the purpose of making a controlled purchase of cocaine from plaintiffs' residence. The affidavit states that the confidential informant contacted plaintiff Whitfield to purchase cocaine. Whitfield allegedly advised him to come to his residence at 101 Pusey Avenue to complete the purchase. This fact is false as no such conversation ever took place.

28.     The affidavit then states that Officer Johnson then orchestrated a controlled purchase of cocaine by the confidential informant from plaintiff Whitfield at his residence. This statement is false as no such purchase and sale ever occurred.

29.     The affidavit then states that the purchase was consummated with money from Officer Johnson and the cocaine was recovered from the confidential informant who purchased from plaintiff Whitfield. These statements were false as no such sale occurred.

30.     The affidavit does not provide a specific date on which the alleged purchase occurred.

31.     The affidavit proceeds to describe a second controlled purchase involving the same confidential informant along with defendant Johnson.

32.     In describing this second alleged purchase, the affidavit sets forth an almost identical set of circumstances as described above in the earlier purchase.

33.    The affidavit states that the informant contacted plaintiff Whitfield who advised him to travel to his residence where the purchase and sale of cocaine was completed.  This assertion is false as no such event occurred.

34.    The affidavit states that Johnson recovered cocaine from the confidential informant allegedly received from plaintiff Whitfield in the course of the purchase and sale.  This assertion is necessarily false as there was no sale of cocaine by plaintiff Whitfield.

35.    The affidavit then states that within 48 hours of the application for the search warrant, the confidential informant again spoke with plaintiff Whitfield who advised him that he was in possession of additional cocaine that was for sale at his residence and that the confidential informant should contact him as soon as he is ready to purchase that cocaine.  This allegation is false as this conversation never occurred.

36.    The name of the confidential informant is not identified in the affidavit.

37.    The affidavit provides no other evidence of any observed drug activity or drug transactions occurring at plaintiffs' residence.  The affidavit contains numerous fabrications made with the intent of establishing the appearance of probable cause to justify a search of plaintiff's residence.

38.    The allegations in the affidavit as set forth in above paragraphs were material to the probable cause determination made by the judicial officer who authorized the search; indeed, without those allegations, the affidavit of probable cause contains no cause or reason to search plaintiff's residence.

39.    It is believed that the actions of defendant Johnson in submitting materially false information in an affidavit of probable cause for a search warrant was part of a practice and custom of defendant and other officers in the Sharon Hill Police Department to secure search warrants based on false information from supposed confidential informants.

7

40.     It is believed and therefore averred that it is the pattern and practice of the Sharon Hill Borough and Sharon Hill Borough Police Department to submit applications for search warrants that contain fabricated and false information, to obtain warrants based upon this falsified information, and to conduct searches that are lacking in probable cause in an unreasonable manner that causes unnecessary damage to citizens' persons and property without justification or compensation.

## C.     Injuries and Damages

41.     As a direct and proximate result of the aforementioned actions of the defendants in searching plaintiffs' residence without probable cause and executing the search in an unreasonable and violent manner, plaintiffs Lamar Whitfield, Ashley McClintock and C.W, have sustained costs and unnecessary damage to their property.

42.     As a direct and proximate result of the aforementioned action of the defendants in searching plaintiffs' residence without probable cause and executing the search in an unreasonable and violent manner and using excessive force, plaintiffs Lamar Whitfield, Ashley McClintock and C.W. sustained and continue to suffer from emotional and mental injuries.

43.     As a direct and proximate result of the aforementioned actions of the defendants, plaintiffs Lamar Whitfield, Ashley McClintock and C.W. suffer from psychological and mental trauma and fear and anxiety.

## COUNT I – SEARCH AND SEIZURE WITHOUT PROBABLE CAUSE
## IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE
## UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 8 OF THE
## PENNSYLVANIA CONSTITUTION

### Plaintiffs v. All Defendants

44.     Plaintiffs incorporate paragraphs 1-43 by reference as though fully set forth herein at length.

45.     Defendants' actions were unlawful in that they lacked independent probable cause of criminal activity involving plaintiffs or their residence and separately fabricated statements and evidence recited in the affidavit as a means to justify the issuance of a search warrant. The search of plaintiffs' residence was illegal under the clearly established law governing search and seizure.

46.     The affidavit provided a false and dishonest basis upon which the judge who issued the search warrant concluded that there was probable cause to search plaintiffs' residence, when, in fact, no actual evidence establishing probable cause existed.

47.     By reason of the aforementioned acts of the defendants in obtaining a warrant based upon fabricated information and otherwise lacking in probable cause and searching plaintiffs' home with the improperly issued warrant, the defendants deprived plaintiffs of their right to be free from unreasonable search and seizure of their home and their person pursuant to the Fourth and Fourteenth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania constitution.

        WHEREFORE, plaintiffs Lamar Whitfield, Ashley McClintock, and C.W. demand judgment in their favor in a sum in excess of $75,000 in compensatory and punitive damages together with lawful interest and costs, and attorneys fees and costs pursuant to 28 U.S.C. § 1988.

## COUNT II – UNREASONABLE EXECUTION OF SEARCH WARRANT IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTSOF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION

### Plaintiffs v. All Police Officers

48.     Plaintiffs incorporate paragraphs 1-47 by reference as though fully set forth herein at length.

49.     The officers failed to knock and announce their presence before breaking open the door of plaintiffs' residence.

50.     The affidavit in support of the warrant contained no truthful facts or circumstances upon which the officers could reasonably believe that knocking and announcing their presence would be futile and/or dangerous.

51.     The affidavit in support of the warrant, even if accepted as true, offered no facts or circumstances upon which the officers could reasonably believe that knocking and announcing their presence would be futile and/or dangerous.

52.     The officers did not present the warrant to Ms. McClintock before conducting the search or during the course of the search, which left Ms. McClintock terrified of the officers' actions and why they were in her home. The officers exercised unlawful force in their execution of the warrant in ransacking the house, threatening to kill the family dog, berating Ms. McClintock in front of her child, handcuffing her inside of her home when there were numerous officers on the scene who could have easily monitored her, forcing her be in their presence partially clothed, and physically dressing her.

53.     The officers never presented the affidavit of probable cause to plaintiffs which contained the supposed factual basis for the search.

54.     The officers caused excessive and unnecessary damage to plaintiffs' residence and personal property throughout the course of their search.

55.     By reason of the officers' actions, and unreasonably and unnecessarily destroying plaintiffs' home and personal belongings during the course of the search, the officers violated plaintiffs' right to be free from unreasonable search and seizure, and their property interest in their residence and personal belongings, in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.

        WHEREFORE, plaintiffs Lamar Whitfield, Ashley McClintock, and C.W. demand judgment in their favor in a sum in excess of $75,000 in compensatory and punitive damages together with lawful interest and costs, and attorneys fees and costs pursuant to 28 U.S.C. § 1988.

### COUNT III – PATTERN AND PRACTICE OF FABRICATING APPLICATIONS TO OBTAIN SEARCH WARRANTS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

#### Plaintiffs v. Sharon Hill Borough and Sharon Hill Police Department

56.     Plaintiffs incorporate paragraphs 1-55 by reference as though fully set forth herein at length.

57.     It is believed and therefore averred that it is the policy, practice and custom of the defendants Sharon Hill Borough and Sharon Hill Borough Police Department, by and through members of the Sharon Hill Borough Police Department to falsify information supporting applications for the procurement of search warrants to obtain search warrants to unlawfully search the homes and  businesses of citizens in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

58.     It is believed and therefore averred that defendant Sharon Hill Borough and Sharon Hill Borough Police Department routinely obtained search warrants and executed searches in

connection therewith based upon fabricated information to support search warrant applications which deprives citizens of their constitutional rights to be free from unreasonable searches and seizures.

59.      It is believed and therefore averred that this pattern and practice, policy and custom of falsifying applications for search warrants is/was known to and affirmed by the Sharon Hill Borough and Sharon Hill Borough Police Department sufficiently resulting in a policy or governing custom and practice causing constitutional injury to plaintiffs.

60.      It is believed and therefore averred that the actions and conduct of the defendant officers were caused by a policy, practice and custom of the defendants Sharon Hill Borough and Sharon Hill Borough Police Department of failing with deliberate indifference, to supervise, monitor, and properly to train officers with respect to a) their duty to provide only truthful information in securing search and arrest warrants, b) their duty to ensure that their dealings and use of confidential informants are in accord with police department policy and constitutional commands, c) their duty to report and disclose misconduct and illegal actions of other police officers, d) legal execution of search warrants.

61.      The defendants Sharon Hill Borough and Sharon Hill Borough Police Department have failed to properly discipline defendant Johnson and other officers from the police department in cases involving of violations of rights of civilians, including cases of improper searches, arrests and prosecutions thereby causing the violations in this case.

62.      The above described actions of all of the defendants caused the violations of plaintiff's rights under the Fourth and Fourteenth Amendments as alleged in this complaint.

63.      The actions and conduct of the defendants, and in particular the practice and custom of the defendants Sharon Hill Borough and Sharon Hill Borough Police Department to fail to properly

12

train, supervise and discipline officers, has caused the harm and unless this Court also orders appropriate equitable relief will continue to cause violations of the rights of plaintiff and others similarly situated who are subject to the law enforcement practices of officers of the Sharon Hill Borough.

WHEREFORE, plaintiffs Lamar Whitfield, Ashley McClintock, and C.W.   demand judgment in their favor in a sum in excess of $75,000 in compensatory and punitive damages together with lawful interest and costs, and attorneys fees and costs pursuant to 28 U.S.C. § 1988.

## COUNT IV – PATTERN AND PRACTICE OF UNREASONABLE EXECUTION OF SEARCH WARRANTS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

### Plaintiffs v. Sharon Hill Borough and Sharon Hill Borough Police Department

64.    Plaintiffs incorporate paragraphs 1-63 by reference as though fully set forth herein at length.

65.    It is believed and therefore averred that it is the policy, pattern and practice of defendant Sharon Hill Borough and Sharon Hill Borough Police Department, by and through members of the Sharon Hill Borough Police Department, to execute search warrants in an unreasonable manner which includes destroying personal property, damaging personal belongings, violating the privacy and personal integrity of occupants of premises, and disrupting the homes and businesses of citizens, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

66.    It is believed and therefore averred that Sharon Hill Borough and Sharon Hill Borough Police Department routinely executes search warrants in an unreasonable manner which includes destroying personal property, damaging personal belongings, violating the privacy and personal integrity of occupants of premises, and disrupting the homes and businesses of citizens, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

67.     It is believed and therefore averred that this pattern and practice of conducting searches in this illegal and unconstitutional manner is/was known to and affirmed by Sharon Hill Borough and Sharon Hill Borough Police Department sufficiently resulting in a policy or governmental custom or practice causing constitutional injury to plaintiffs.

68.     It is believed and therefore averred that the actions and conduct of the defendant officers were caused by a policy, practice and custom of the defendants Sharon Hill Borough and Sharon Hill Borough Police Department of failing with deliberate indifference, to supervise, monitor, and properly to train officers with respect to their duty to execute search warrants consistent with the Fourth and Fourteenth Amendments to the United States Constitution which includes, but is not limited to, taking care not to unnecessarily destroy personal property, damage personal belongings, violate the privacy and personal integrity of occupants of premises, and disrupt the homes and businesses of citizens

69.     The defendants Sharon Hill Borough and Sharon Hill Borough Police Department have failed to properly discipline defendant Johnson and other officers from the police department in cases involving of violations of rights of civilians, including cases of improper execution of search warrants, thereby causing the violations in this case.

70.     The above described actions of all of the defendants caused the violations of plaintiff's rights under the Fourth and Fourteenth Amendments as alleged in this complaint.

71.     The actions and conduct of the defendants, and in particular the practice and custom of the defendants Sharon Hill Borough and Sharon Hill Borough Police Department to fail to properly train, supervise and discipline officers, has caused the harm and unless this Court also orders appropriate equitable relief will continue to cause violations of the rights of plaintiff and others

similarly situated who are subject to the law enforcement practices of officers of the Sharon Hill Borough.

WHEREFORE, plaintiffs Lamar Whitfield, Ashley McClintock, and C.W. demand judgment in their favor in a sum in excess of $75,000 in compensatory and punitive damages together with lawful interest and costs, and attorneys fees and costs pursuant to 28 U.S.C. § 1988.

## COUNT V – ASSAULT AND BATTERY

72.     Plaintiffs incorporate paragraphs 1-71 by reference as though fully set forth herein at length.

73.     The aforementioned actions of defendants Officer Sean Johnson, Officer Thomas Kesser, and Officers John Does one through six, put plaintiffs McClintock and C.W. in fear of, and caused painful and offensive bodily contact with, plaintiffs, thereby constituting the torts of assault and battery under Pennsylvania law.

WHEREFORE, plaintiffs Lamar Whitfield, Ashley McClintock, and C.W. demand judgment in their favor in a sum in excess of $75,000 in compensatory and punitive damages together with lawful interest and costs, and attorneys fees and costs pursuant to Pennsylvania law.

15

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial in this case.

WISEMAN AND SCHWARTZ, LLP

By: _____

Karl Schwartz, Esquire

718 Arch Street, Suite 702 North
Philadelphia, PA 19106
www.wisemanschwartz.com
(267) 758 - 2326

*Attorneys for Plaintiffs*
*Lamar Whitfield, Ashley McClintock,*
*individually and on behalf of*
*minor C.W.*

Date: September 12, 2019

FILED

SEP 17 2019

KATE BARKMAN, Clerk
By_____Dep. Clerk

16

# Exhibit A

# Commonwealth of Pennsylvania
## COUNTY OF DELAWARE

## APPLICATION FOR
# SEARCH WARRANT
### AND AUTHORIZATION

| Docket Number (Issuing Authority): | Police Incident Number: 20170921M5815 | Warrant Control Number: |
|---|---|---|

| PTLM. SEAN JOHNSON | SHARON HILL POLICE DEPARTMENT | (610)237-6200 | 9/28/2017 |
|---|---|---|---|
| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED** (Be as specific as possible):

Controlled Substances, devices, and/or drugs including but not limited to cocaine. Any items used for cutting, weighing, bagging, and/or ingesting controlled substances. Any items used to keep drug transaction records (tally sheets), any monies/assets, pagers, cellular telephones, computers, hard (Cont)

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED** (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.); Social security numbers and financial information (e.g., PIN) should not be listed. If the identity of an account number must be established, use only the last 4 digits. 204 PA §§ 2311 - 2313.

101 Pusey Ave, apartment 2, Collingdale, Delaware County. Pa, 19023 is a two story twin apartment, apartment number 2 is located on the left hand side, which has a white storm door, outlined in blue trim, with a window located next to the front door. The bottom exterior portion of 101 pusey is white stucco. (Cont)

**NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED** (if proper name is unknown, give alias and/or description):

Lamar WHITFIELD B/M  D.O.B. 01/2/1982)

**VIOLATION OF** (Describe conduct or specify statute):

Title 35 P.S. Section 780-113(a), (30), (16),

**DATE(S) OF VIOLATION:**

Today's date and times past

☐ **Warrant Application Approved by District Attorney - DA File No.**
(If DA approval required per Pa.R.Crim.P. 201(5) with assigned File No. per Pa.R.Crim.P. 507)

☐ **Additional Pages Attached (Other than Affidavit of Probable Cause)**

☐ **Probable Cause Affidavit(s) MUST be attached (unless sealed below)  Total number of pages:** _____ 9
**TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED**

The below-named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at the particular premises or in the possession of the particular person as described above.

| | Sharon Hill Police | 104 |
|---|---|---|
| Signature of Affiant | Agency or Address if private Affiant | Badge Number |

Sworn to and subscribed before me this 28 day of September, 2017. Mag. Dist. No. 32-2-52

Box 3 Mac Dab Blvd. Darby Pa 19023  (SEAL)

| Signature of Issuing Authority | Office Address |
|---|---|

**SEARCH WARRANT
TO LAW ENFORCEMENT
OFFICER:**  WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☒ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than *

☐ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than **
___ P.M. o'clock _3_ month 31 day 2017

☒ This Warrant shall be returned to judicial officer _32 MDJ Lipson H  32-2-46_

\* The issuing authority should specify a date: no later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
\*\* If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this 28 day of Sept 2017 2018 at 1:05 P M. o'clock

32-2-31  1/6/2080  (SEAL)

| Signature of Issuing Authority | Mag. Dist. or Judicial Dist. No. | Date Commission Expires: |
|---|---|---|

Title of Issuing Authority: ☒ Magisterial District Judge  ☐ Common Pleas Judge  ☐

☐ For good cause stated in the affidavit(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature. (Pa.R.Crim.P. 211)

_____  (Date)  (SEAL)

| Signature of Issuing Authority | (Judge of the Court of Common Pleas or Appellate Court Justice or Judge) |
|---|---|

MDJS-410A



# Commonwealth of Pennsylvania

## COUNTY OF DELAWARE



# AFFIDAVIT OF PROBABLE CAUSE

| Docket Number (Issuing Authority): | Police Incident Number: 20170921M5816 | Warrant Control Number: |
|---|---|---|

PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:
Social security numbers and financial information (e.g. PINs) should not be listed. If the identity of any account number should be confidential, cite only the last 4 digits. 204PA§§ 213.1 - 213.8.

Your affiant, Officer Sean Johnson has been a Police Officer for the past nine (9) years, the last eight (8) with the Sharon Hill Police Department. Your affiant is also a member of the Delaware County District Attorney's Office Drug Task Force. During the past years your affiant has made numerous purchases of various types of narcotics while working in an undercover capacity. During the past eight years, your affiant has been involved with the investigations involving illegal sales, use and distribution of controlled substances. As a result, during the above stated years, your affiant has prepared and executed numerous search warrants resulting from narcotic investigations and has made numerous arrests for violations of the Controlled Substance, Drug device and Cosmetic Act #64. These arrests involved charges ranging from possession to possession with the intent to deliver controlled substances. Your affiant has also spoken to numerous individuals who are involved with illegal narcotics, either as a drug user or a drug dealer. As from the above experience, your affiant is familiar with the ways that controlled substances are cultivated, manufactured, weighed, packaged, stored, sold and distributed. This experience, along with your affiant attending over 200 hours of Narcotics related training to include The State Police Top Gun Narcotics school and The 420 Group Narcotics Interdiction school, successfully completing the same, have resulted in your affiant being qualified to testify as an expert in the District Courts of Delaware County.

During the month of July of 2017, your affiant spoke with a reliable confidential informant (hereafter referred to as CI1). CI1 wishes that his/her identity remain anonymous for fear of bodily harm and / or injury to CI1 and /or CI1's family should his/her identity become known. Your affiant similarly wishes that the identity of CI1 remain anonymous, since should his/her identity become known, he/she would no longer be supply law enforcement officials with information regarding drug trafficking in the Delaware County area. In conversation with your affiant, CI1 has demonstrated a thorough familiarity with the ways in which controlled substances are processed, prepared, packaged, ingested and distributed, as well as the weights and corresponding prices at which various controlled substances are commonly sold. In conversation with affiant CI1 has made numerous statements against his/her penal interest, including the fact that CI1 is/was a user/seller of controlled substance(s). CI1 has provided information in the past to law enforcement officials concerning drug trafficking in Delaware County, Pennsylvania which has been corroborated by police investigation and other reliable sources of information. CI1 has provided information in the past to law enforcement in the past that has led to seizure of controlled substances, the arrest of one (1) individual resulting in a conviction for a violation of

(Continued)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| | | | |
|---|---|---|---|
| Affiant Signature | 9/28/17 Date | Issuing Authority Signature | 9/28/17 Date [SEAL] |

# Commonwealth of Pennsylvania

## COUNTY OF DELAWARE



# AFFIDAVIT OF PROBABLE CAUSE

| Docket Number (Issuing Authority): | Police Incident Number: 20170921MS816 | Warrant Control Number: |
| --- | --- | --- |

PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an agency/member must be established, use only the last 4 digits.
20170921MS816

the Controlled Substance, Drug, Device, and Cosmetic Act. In all of affiant's dealings with CI1, Your affiant has found CI1 to be truthful and reliable. During the month of July of 2017, Your affiant was in contact with CI1, at which time CI1 advised your affiant that two (2) people who live together, known to CI1 as "Ashley," and "Bud" who are cocaine dealers, who are described as follows, Ashley, a white female approximately 5'5" to 5'7" tall, with dirty blonde hair and green eyes, in her late 20's early 30's and "Bud" a black male approximately 5'9" to 6'2" tall, with close cut dark hair, and brown eyes, in his mid 30's currently residing at 101 Pusey Ave, apartment 2, in Collingdale Borough, Delaware County, PA. CI1 further related that "Ashley" and "Bud" are in the business of selling cocaine from their residence located at, 101 Pusey Ave, apartment 2, in Collingdale Borough, Delaware County, PA. CI1 states that he/she was aware of this as CI has parked in front of "Ashley", and "Bud's" residence of, 101 Pusey Ave, apartment 2, in Collingdale Borough Delaware County, PA, when he/she has purchased cocaine from "Ashley", as well as "Bud". When CI1 wishes to purchase cocaine, customers of "Ashley" as well as "Bud" will contact "Ashley" or "Bud" who will instruct CI1/customer(s) to come to 101 Pusey Ave, apartment 2, in Collingdale Borough, Delaware County, PA, where "Ashley" or "Bud" will conduct the sale of cocaine. Again, this was during the month of July of 2017.

Your affiant began an investigation into 101 Pusey Ave, apartment 2 Collingdale Borough, Delaware County, PA, and the individuals identified by CI1 as "Ashley" and "Bud". During the course of this investigation, with the assistance of Officer Macintosh from the Collingdale Police Department, your affiant was able to obtain a photograph of Ashley McClintock, (DOB 05/10/1987) through JNET Photo Search and found that Ashley MCCLINTOCK, (DOB 05/10/1987) is a white female, 5'7", brown hair and brown eyes, with a listed address of 101 Pusey Ave, Apartment 2 Collingdale Borough PA. That photograph was shown to CI1 and CI1 identified the individual in the photograph as "Ashley", the same individual whom CI1 has purchased controlled substances from during the described controlled purchases, "Ashley" will be referred to hereinafter as MCCLINTOCK. Your affiant was also able to obtain a photograph of a Lamar WHITFIELD (DOB 01/20/1982) through JNET Photo Search and found that Lamar WHITFIELD, (DOB 01/20/1982) is a black male, 5'1", black hair and brown eyes, with a listed address of 101 Pusey Ave. Collingdale Borough PA. That photograph was also shown to CI1 and CI1 identified the individual in the photograph as "Bud", the same individual whom CI1 has purchased controlled substances from during the described controlled purchases, "Bud " will be referred to hereinafter as WHITFIELD,

(Continued)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 9/28/17 | Issuing Authority Signature | Date 9/28/17 | (SEAL) |

MDJS 410B-10

# Commonwealth of Pennsylvania
## COUNTY OF DELAWARE



# AFFIDAVIT OF PROBABLE CAUSE

| Docket Number (Issuing Authority): | Police Incident Number: 20170921MS816 | Warrant Control Number: |
|---|---|---|

PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:
Social security numbers and/or available information (e.g., PSN) should not be listed. If the identity of an account number cannot be established, use only the last 4 digits.
234 Pa.R§ 213.1 - 213.7.

During the month of August of 2017, your affiant met with CI1 for the purpose of making a controlled purchase of cocaine from the residence at 101 Pusey Ave. apartment 2, Collingdale Borough PA. åâCI1 contacted WHITFIELD to purchase cocaine and CI1 was advised by WHITFIELD to come to the area of 101 Pusey Ave. Collingdale Borough, Delaware County PA, conduct the purchase. åâYour affiant searched CI1 and found CI1 to be free of drugs and money. åâYour affiant provided CI1 a quantity of currency with which to make controlled purchase of cocaine from WHITFIELD. åYour Affiant and CI1 preceded to the vicinity of 101Pusey Ave, Collingdale Borough, Delaware County, PA. CI1 was placed under constant surveillance by your affiant, as well as other undercover officers, as CI1 left your affiant, CI1 went directly to 101 Pusey Ave, Collingdale Borough, Delaware County PA, apartment 2, without making any stops nor without meeting any other individuals prior to meeting WHITFIELD who opened the door from the inside of 101 Pusey Ave, apartment 2 and invited CI1 inside, where CI1 remained inside for a short period of time, before exiting andââreturned directly to your affiant, without making any stops. CI1 turned over one (1) small clear zip lock style baggie containing a hard white chunky substance, and CI1 stated that he/she had just purchased from WHITFIELD, from inside 101 Pusey Ave. apartment 2, Collingdale, Delaware County, PA. CI1 was again searched for money and controlled substances and was found to be free of both. åâYour affiant subsequently conducted a field test of the hard white chunky substance, and received a positive reaction for the presence of cocaine. ââAgain, this controlled purchase occurred within the month of August of 2017.

Within two weeks of this application, your affiant met with CI1 for the purpose of making a controlled purchase of cocaineâfrom WHITFIELD. ââCI1 contacted WHITFIELD to purchaseâcocaineâand CI1 was advised by WHITFIELD to come to101 Pusey Ave. Apartment 2. âåCollingdale Borough, Delaware County, PA to conduct the purchase. åâYour affiant searched CI1 and found CI1 to be free of drugs and money. åâYour affiant provided CI1 a quantity of currency with which to make controlled purchase of cocaineâfrom WHITFIELD. Your Affiant and CI1 preceded to the vicinity of 101Pusey Ave, Collingdale Borough, Delaware County, PA. CI1 was placed under constant surveillance by your affiant, as well as other undercover officers, CI1 left your affiant and went directly to 101 Pusey Ave, Collingdale Borough, Delaware County PA, apartment 2, without making any stops nor without meeting any other individuals prior to meeting WHITFIELD who opened the door from the inside of 101 Pusey Ave, apartment 2 and invited CI1 inside, where CI1 remained inside for a short period of time, before exiting

(Continued)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 9/22/ | Issuing Authority Signature | Date 9/5/8 (SEAL) |
|---|---|---|---|

Page 4 of 5 Pages

MDJS 412B-10

# Commonwealth of Pennsylvania
## COUNTY OF DELAWARE



# AFFIDAVIT OF PROBABLE CAUSE

| Docket Number (Issuing Authority): | Police Incident Number: 20170921M5816 | Warrant Control Number: |
|---|---|---|

PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:
(Social security numbers and financial information (eg. PINs) should not be listed. If the identity of an account number must be established, complete the last 4 digits. 204 PA § 213 or 213(f))

and returned directly to your affiant, without making any stops. CII turned over one (1) small clear zip lock style baggie containing a hard white chunky substance, and CII, stated that he/she had just purchased from WHITFIELD, from inside 101 Pusey Ave. apartment 2, Collingdale, Delaware County, PA. CII was again searched for money and controlled substances and was found to be free of both. Your affiant subsequently conducted a field test of the hard white chunky substance, and received a positive reaction for the presence of cocaine. §§Again, this controlled purchase occurred within two weeks of this application.

§§§§§§§§§§

Within 48 hours of the application of this search warrant your affiant spoke with CII, who advised your affiant that within the same 48 hours of this application for search warrant, had a conversation with WHITFIELD who informed CII he (WHITFIELD) was in possession of additional cocaine available for sale at 101 Pusey Ave. Apartment 2, Collingdale Borough, Delaware County, PA. §§In conversation, WHITFIELD advised CII to contact WHITFIELD whenever CII was ready to purchase the cocaine as WHITFIELD had cocaine available for sale and would be ready to sell the same to CII. §§Again, this was within 48 hours from the application of this search warrant.

Based on your affiant's training and experience as well as the facts set forth above, your affiant knows that persons distributing quantities ofcocaine, such as WHITFIELD, is a drug trafficker. §§Such traffickers must engage in a preparation process prior to distributing cocaine. §§Given the nature of this process, your affiant knows that based upon his training and experience that traffickers, such as WHITFIELD, commonly engage in the same process at their residence or the residence of a close associate, and/or family member that allows the trafficker direct control over the location and hence, the trafficker is secure in minimizing detection by the police. §§Also, such a practice of maintaining direct control over the location minimizes the trafficker's apprehension of "ripoffs" from other dealers and/or drug users. §§As this location represents a safe haven for them, your affiant also knows that it is common for traffickers to keep other items related to their drug trafficking at this location, such as a supply of cocaine, proceeds from drug sales, monies/assets, tally sheets, and/or firearms to protect their stash from being robbed. §§

Your affiant, Officer Sean Johnson, Badge #6166, believing the above information to be true and correct to the best of your affiant's knowledge, information and belief, requests that a search warrant be issued for the residence of 101 Pusey Ave, Apartment 2, Collingdale Borough, Delaware County,

(Continued)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 7/28/17 | Issuing Authority Signature | Date 7/28/17 | (SEAL) |
|---|---|---|---|---|

MDJS-410B-10

Commonwealth of Pennsylvania

COUNTY OF DELAWARE



# AFFIDAVIT OF PROBABLE CAUSE

| Docket Number (Issuing Authority): | Police Incident Number: 20170921M5816 | Warrant Control Number: |
|---|---|---|

PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:
Social security numbers and financial information (e.g. PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits. 204 PA.R.C.P.A. 213.7.

2A, and for the person of LAMAR WHITFIELD (DOB 01/20/1982).

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 9/28/17 | Issuing Authority Signature | Date 7/28/17 | (SEAL) |
|---|---|---|---|---|

Page 6 of 9 Pages

MDJS 410B-10

# Commonwealth of Pennsylvania

## COUNTY OF DELAWARE

### APPLICATION FOR
# SEARCH WARRANT
#### CONTINUATION PAGES

| Docket Number (Issuing Authority): | Police Incident Number: 20170921M5816 | Warrant Control Number: |
|---|---|---|

**Continuation of:**

[X] Items to be searched and seized    [ ] Description of premises/person(s) to be searched    [ ] Owner/Occupant    [ ] Violations

drives, along with their memories and drug paraphernalia and resident identification and control.  Any and all firearms and all ammunition for those firearms.

7/22/17

MDJS 4100-58

# Commonwealth of Pennslyvania

## COUNTY OF   DELAWARE

### APPLICATION FOR
### SEARCH WARRANT
#### CONTINUATION PAGES

| Docket Number (Issuing Authority): | Police Incident Number:   20170921M5816 | Warrant Control Number: |
|---|---|---|

**Continuation of:**

☐ Items to be searched and seized   ☒ Description of premises/person(s) to be searched   ☐ Owner/ Occupant   ☐ Violations

and the second story is brick.

7/26/17

Page   8   of   9   Pages

MDJS 410C-95

**Commonwealth of Pennsylvania**

**COUNTY OF DELAWARE**

**APPLICATION FOR**
**SEARCH WARRANT**
**CONTINUATION PAGES**

| Docket Number (Issuing Authority): | Police Incident Number: 20170921M5816 | Warrant Control Number: |
|---|---|---|

**Continuation of:**

☐ Items to be searched and seized  ☐ Description of premises/person(s) to be searched  ☐ Owner/ Occupant  ☒ Violations

(Violation Codes)

(32) the Controlled Substance, Drug, Device and Cosmetic Act

7/26/17

Page 9 of 9 Pages

MDJS-410C-98